

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable M. O. Flowers
Secretary of State
Austin, Texas

Dear Sir:                    Attn:  Mr. Claude A. Williams

Opinion No. 0-1635
Re:  Filing Fee and Franchise
     Taxes of the Matador Land
     and Cattle Company, Limited.

     We are in receipt of your letter of October 26, 1939, requesting the opinion of this Department as to what amount your department should accept as representing the capital stock of the Matador Land and Cattle Company, Limited, an English corporation, for the purpose of computing its fees for renewing its right to do business in Texas under Article 3914, Revised Civil Statutes, 1925, as amended, and its annual franchise tax under Article 7084, Revised Civil Statutes, 1925, as amended. Your letter reads, in part, as follows:

    "There is controversy between this Department and said company as to the amount of capital stock subject to filing fees and franchise taxes which arises due to the following facts:

    "(a)  It is conceded that all of the capital stock, amounting to 50,000 shares of the par value of approximately $30.00, has been subscribed, aggregating — $1,461,000.00.

    "(b)  The capital 'called up' by the directors is — $974,000.00, amounting to approximately $20.00 per share.

    "(c)  The capital prepaid in respect of 'capital callable' is — $114,961.00.

    "(d)  The capital still callable is — $372,039.00, which is security for debentures issued amounting to $346,656.00.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. M.C. Flowers, Page 2

"The company contends thatthe subscribed capital stock is $974,000.00 and that the capital amounting to $487,000.00, subject to call, is not subject to filing fees or franchise taxes, their contention being that $114,961.00 advanced over and above $20.00 per share is in the nature of an advancement upon which interest is paid and that the capital still callable is not due by the stockholders as stock subscribed until the directors call for such payment. The company's argument is that under the English Law the amount subscribed should be determined as the amount called by the directors, and that until a call is made for the unpaid portion, there is no liability on the part of the stockholders for the balance of the stock subscription, hence no filing fee should be assessed against this portion of the stock. In support of their contention, excerpts from a resolution passed by the Board of Directors on February 1, 1867 and from the case of Lock & Trotman, v. Queensland Investment and Land Mortgage Company, Limited, 1896 LR AC, page 461, were submitted in their letter dated September 18, 1939. Also observe their contention in their letter of September 2nd that shareholders do not have the option of paying the full $30.00 per share on their shares at this time, as the remaining $10.00 is subject to call.

"We also call your attention to the provisions contained on pages 9, 11, 15, 16 and 35 of the Articles of Association filed in this office in 1929 concerning the nature of this stock.

"You will observe that in the renewals of permit dated October 25, 1929, October 1st, 1919, September 18, 1909, and December 8, 1899, statements were made that all of the capital stock was subscribed and approximately 75% thereof paid in, and filing fees paid on the entire capital stock.

"We, therefore, request your opinion as to which of the following amounts our filing fee shall be based:

"(a) $1,461,000.00
"(b) $1,088,961.00
"(c) $ 974,000.00

Hon. M.O. Flowers, Page 3

"We also request your opinion as to which of the following sums our franchise tax will be assessed:

"(a)  $1,461,000.00
"(b)  $1,088,961.00
"(c)  $ 974,000.00"

That part of Article 3914, Revised Civil Statutes, 1925, as amended, Acts 1931, p. 204, Ch. 120, providing for the filing fee of a foreign corporation to renew its right to do business in Texas, reads as follows:

"Upon obtaining a permit under Article 1529 and upon filing a certified copy of any amendment or supplement under Article 1537, each foreign corporation shall pay the following fees for the privilege of being admitted to do an intrastate business in this State; Fifty ($50.00) Dollars for the first Ten Thousand ($10,000.00) Dollars of its issued capital stock employed in Texas, as hereinafter determined, and Ten ($10.00) Dollars for each additional Ten Thousand ($10,000.00) Dollars or fractional part thereof. The amount of the issued capital stock so taxable shall be that proportion of the whole thereof, as the gross assets employed in whole or in part in intrastate business in Texas, plus the gross receipts from intrastate Texas business, bear to the entire assets and receipts of the corporation. In the case of a beginner corporation obtaining a permit to do business in Texas for the first time, where it has theretofore employed no capital stock in Texas, the basic filing fee of Fifty ($50.00) Dollars shall be paid as hereinabove provided and within ninety (90) days after the expiration of the first year under its permit, the corporation shall file an affidavit with the Secretary of State executed by one of its executive officers, showing the amount of gross assets employed in whole or in part in intrastate business in Texas and the amount of its entire gross assets at the end of such first year with all other data required to calculate the fee, and at such time shall pay to the Secretary of State the balance of the filing fee on the proportion of its issued capital stock as hereinbefore determined, in excess of Ten Thousand ($10,000.00) Dollars at the rate of Ten ($10.00) Dollars for each additional Ten Thousand ($10,000.00) Dollars or fractional part of such excess. If, during any year of the life of any such permit, additional

Hon. M.O. Flowers, Page 4

capital stock is issued under an amendment
increasing the capital stock, such corporation
shall, within ninety (90) days from the end of
such permit year, file a similar affidavit and
pay the balance of the filing fee on any such ad-
ditional issued capital stock employed in Texas
as shown in such report in the same manner as
provided herein for the payment on the excess
in the case of a beginner corporation; provided,
that the minimum filing fee for any amendment or
supplement shall be Fifty ($50.00) Dollars. Where
the assets employed in Texas are used jointly in
intrastate and interstate business, only that por-
tion of the gross value thereof shall be used in
calculating such fees as the intrastate Texas re-
ceipts bear to the interstate Texas receipts from
the entire operation in Texas."

Article 7084, Revised Civil Statutes, 1925, as
amended, Acts 1931, p. 441, Ch. 265, provides, in part, as
follows:

"(a) Except as herein provided, every
domestic and foreign corporation heretofore
or hereafter chartered or authorized to do
business in Texas, shall, on or before May
1st of each year, pay in advance to the Secre-
tary of State a franchise tax for the year
following, based upon that proportion of the
outstanding capital stock, surplus and un-
divided profits, plus the amount of outstand-
ing bonds, notes and debentures, other than
those maturing in less than a year from date
of issue, as the gross receipts from its busi-
ness done in Texas bears to the total gross
receipts of the corporation from its entire
business, which tax shall be computed at the
following rates for each One Thousand Dollars
($1,000.00) or fractional part thereof. . ."

We do not understand your request as intended to
review your departmental construction of the statutes, since
their enactment, which is based upon an Attorney General's
Conference Opinion written by Hon. C. M. Cureton, First
Assistant Attorney General, late Chief Justice of the Supr-
eme Court of Texas, dated April 12, 1917, Book 49, p.151, A.G.
Opinions and Rep. 1916-1918, p. 221, in which it was ruled
that "capital stock of said corporation issued and outstand-
ing" meant that part of the authorized capital stock which
had been subscribed although not fully paid in and subject

Hon. W.C. Flowers, Page 5

to call. For the purposes of this opinion we accept your long established departmental constructionof these stat- utes and consider the contentions of the taxpayer thatbe- cause of the English laws applicable to such corporation, the full amount of its stock should not be considered for taxation or license fee purposes.

Apparently under the English law members of the Limited Company are issued certificates on the total par value of the shares subscribed upon payment of a part or all of the par value, in this instance four pounds on six pounds per value stock, leaving two pounds per share unpaid for which the subscriber is subject to call. The stockholder may not pay up the unpaid portion of his stock in the ab- sence of a call or without the consent of the directors and it is also provided that advances may be made by the stock- holders as a prepayment against future calls on their un- paid stock; when authorized by the directors. These pre- payments against calls are not considered as payments upon the stock in its strict sense, but are considered more in the nature of a loan upon which interest is paid and in the event a call is made, or the corporation is dissolved and it becomes necessary to enforce calls for the benefit of creditors, the amount advanced is credited as an offset against such call to the extent of the prepayment. Under the laws of Texas a corporation may not issue stock upon an inadequate consideration and it is provided that a cor- poration shall not issue stock except for money paid, labor done or property received. Constitution, Article XII, Sec. 6, Articles 1353-1354, Revised Civil Statutes, 1925. Stock subscriptions must be fully paid up within two years.

We quote the following from Palmer's Company Law, 15th Edition, pages 96 and 110:

"Every such subscriber becomes a member ipso facto on the incorporation of the company, and liable as the holder of whatever number of shares he has subscribed for. The 23rd section of the Act of 1862 (for which sect. 25 of the Act of 1929 is substituted), as Bowen, L. J., pointed out (Nicol's case 29 Ch. D. 444), de- fines the status of a subscriber of the memor- andum of association in a different way to the position of other persons who agree to become members. 'It is plain', said Lord Cairns in Evan' case (1867); L.R. 2 Ch. App. 430, 'that the original subscribers are, by the Act of Par- liament, deemed to have taken the shares set op- posite their names'; the object being that the public might rely with confidence on the sub- scribers of the memorandum becoming members of

the company.  And see Migotti's case, 4 Eq. 238.
In the case of the subscribers of the memorandum,
therefore, no allotment is necessary (Re London
and Provincial, & Co. 5 Ch. D. 525); no entry on
the register of members is necessary.  Nichol's
case, supra; Alexander v. Automatic Telephone
Co., (1900)2 Ch. 63.  The subscriber is bound
to take the shares from the company, and to pay
for them on calls duly made like any other share-
holder."

"The terms of the Act of 1929, and in par-
ticular the provisions of Sects. 20 and 157,
leave no doubt, in the case of a company limit-
ed by shares, about the obligation of share-
holders to pay to the company the full amount
of their shares.  The words of the section limit-
ing the liability of members to 'the amount un-
paid on their shares,' can only mean, as Lord
Macnaughten pointed out in the Coregum case,
(1892) A. C. 145, that the liability of the mem-
ber continues so long as anything remains un-
paid on his shares.  Nothing but payment, and pay-
ment in full, can put an end to the liability.
'But all this legislation,'said his lordship ,
on p. 144, 'proceeds on the footing of recog-
nizing and maintaining the liability of the in-
dividual member to the company until the pre-
scribed limits are reached .' . . ."

From the foregoing it appears that the stock own-
ed by the members up to the full amount of the par value,
whether fully paid or partially paid with a fraction re-
maining subject to call, is not radically different from
subscribed stock in this jurisdiction, and the inclusion
of the full amount of the stock issued by this corporation
will only place it upon the same footing and basis with
other corporations as the statute is applied by the Sec-
retary of State's office.

With reference to prepayments in respect of future
calls, Palmer's Company Law, 15th Edition, states at page
146 as follows:

"The articles of a company usually contain
a clause similar to Clause 16 of Table A., em-
powering the directors to receive from any member
money in advance of calls, on the footing that

interest is to be paid thereon whilst in advance. This is an extremely important power and one which is frequently exercised. It is in the nature of a trust to be faithfully exercised for the benefit of the company, and accordingly the directors should only receive money in advance when, in their judgment, the same can be advantageously used for the purposes of the company, and the rate of interest should not be excessive. Poole, Jackson and Whyte's case (1878), 9 Ch. D. 322; In re Fyle Works, 44 Ch. D. 586. Hence, where directors under a power of this kind paid up in advance their own shares, and the same day appropriated the amount in payment of their fees, the company being insolvent, it was held, that the transaction, not being bona fide, was ineffectual, and that the directors remained liable on their shares. Sykes' case, 13 Eq. 255. See, however, Mason's,&c. case, In re Liverpool &c. Insurance Co., 40 W. R. 376; In re A. M. Woods, Ship's Woodite Protection Co., 2 Mag. C. R. 164; also Washington Diamond Mining Co., (1893) 3 Ch. 95. It has now been settled by the House of Lords that where money is paid up in advance under such a clause on the footing that it is to carry interest, such interest is to be paid whether there areor are not profits for the payment thereof. If there are no profits, or the profits are insufficient, then the company must pay out of capital, and there is nothing ultra vires in this. Lock v. Queensland, &c. Mortgage Co., (1896) A. C. 461, 467. Where capital has been paid up in advance it ranks for repayment in a winding-up prima facie before capital not paid up in advance. Maude, Ex Parte, 6 Ch. App. 51; Wakefield, &c. Co., (1892) 3 Ch. 165; In re Exchange Drapery Co., 38 Ch. D. 171. The company is not entitled to repay the amount advanced at any time against the wish of the shareholder in the absence of a duly sanctioned reduction of capital. London and Northern S. B. Co. v. Farmer, W. N. (1914) 200; 111 L.T. 204."

It is also stated in Lock and Trotman v. Queensland Investment and Land Mortgage Co., Lt., (1896), L.R.A.C. p. 461, that:

Hon. M.G. Flowers, Page 8

"My Lords, I agree, Section 7 of Table A
authorizes the directors of a company limited
by shares to agree with any member for an ad-
vance of money on the terms that the money so
advanced is to be applied in discharge of the
member's liability on his shares when and as
that liability ripens into a debt presently
payable, and that in the meantime the member
is to be entitled to interest on the advance
as if he were an ordinary creditor of the com-
pany.  The interest is to be due to him in the
character of creditor, not in his character as
member . .... ."

The member's advancement against future calls on
his stock liability does not in any way reduce the amount of
capital stock of the company, although until a call is made
the prepayment bears interest, instead of sharing in the divi-
dends. The money thus advanced by the stockholders against their
liability on their stock, contributes just as much to the busi-
ness potency of the company and represents a part of the actual
available working capital of the company attributable to capital
stock, whether characterized as a prepayment on future calls
or a present payment on the stock in complete discharge of lia-
bility for the unpaid stock or subscription.

An additional consideration arises, however, with
reference to the Texas Tax Statute, because of the fact that
Article 7084, as amended, includes outstanding bonds, notes
and debentures maturing oneyear or more from date of issue,
as a part of the taxable capital of the corporation.  In this
case the members' unpaid liability on their stock has been
pledged by the company as security for its debentures issued
amounting to $340,656.00 and it is suggested by the company
that if a call should be made upon the unpaid portion of the
stock, a corresponding amount of the debentures for which they
are security must also be paid up and for that reason the
inclusion of both callable capital and the debentures results
in a duplicate capitalization.

If the necessity for retiring the debentures upon
calling in the underlying callable capital, which is security
therefor, arose out of the fact that the debenture holders
would probably demand additional security to replace the
pledged stock, this would not be necessarily true.  However,
we find the following provision in the company's Articles of
Association:

"The total issue of such bonds and deben-
tures shall not at any time exceed the amount of
unpaid capital . . . ."

Hon. M.C. Flowers, Page 9

Because of this provision, the necessity for reducing the debentures when a call is made upon unpaid capital is based upon the limitation upon the company's authority to issue bonds and debentures and fixes a maximum capitalization of both stock and debentures in the amount of the par value of the subscribed stock. Under these circumstances, thefull amount of the underlying callable capital, and the outstanding debentures would result in setting up a taxable capital in excess of the maximum limit which the corporation would be authorized to reach under its charter and the laws of its domicile, and it is our opinion that to this extent it would in fact result in a duplication of capital not contemplated by the franchise tax statute.

It is our opinion that the taxable capital of the Matador Land and Cattle Company, Ltd., for the purpose of calculating the corporation's permit filing fee should be accepted on $1,461,000.00, being the full amount of the shares subscribed and in the hands of stockholders.

Since the franchise tax is based upon capital stock, surplus and undivided profits, and notes, bonds and debentures other than those maturing less than one year from date of issue, and we do not have all of these figures before us we cannot state the exact amount of taxable capital upon which the franchise tax should be based, however, we trust that the above discussion will enable you to compute the tax.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        (Signed)
Cecil C. Cammack
Assistant.

APPROVED APR 13 1940
(Signed) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

CCC:TM:JMc        APPROVED OPINION COMMITTEE BY BWB CHAIRMAN.